# Commonwealth ex rel. *v.* Tweedy, Appellant.

*Parent and child—Custody—Practice, Q. S.—Order of court—Review—Appeals—Act of July 11, 1917, P. L. 817—Supersedeas—Act of May 19, 1897, P. L. 67, section 12.*

Where a child, whose parents had separated, has been under the care of her grandmother, an order requiring the grandmother to compel the child to visit her mother at stated intervals is erroneous, especially where the record shows that such an order will be contrary to the welfare of the child.

The Act of July 11, 1917, P. L. 817, relating to appeals from proceedings involving the custody of children, requires the Superior Court to consider the testimony and make such order upon the merits of the case as to right and justice shall belong. Where that court has reviewed the testimony, and is of the opinion that the order of the court below was without legal justification, such order will be modified or reversed.

The mere taking of an appeal from an order of the court, relating to the custody of a child, did not in itself act as a supersedeas. Such a proceeding is governed by the 12th section of the Act of May 19, 1897, P. L. 67, and the appeal does not operate as a supersedeas, unless so ordered by the court below or the appellate court or any judge thereof.

Argued April 22, 1920.  Appeals, Nos. **76** and **77**, April T., 1920, by James Tweedy and Rebecca J. Tweedy, from order of C. P. Beaver County, March T., 1919, No. 379, on writ of habeas corpus to determine the custody of a minor child in the case of Commonwealth ex rel. Myrtle Tweedy v. John A. Tweedy, Rebecca J. Tweedy and James Tweedy.  Before PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ.  Reversed.

Habeas corpus to determine the custody of a minor child.  Before BALDWIN, P. J.

The facts are stated in the opinion of the Superior Court.

The court awarded the custody of the child to her grandmother, Rebecca J. Tweedy, with the provision

578    COMMONWEALTH *v.* TWEEDY, Appellant.

Statement of Facts—Opinion of the Court. [74 Pa. Superior Ct.

that she be allowed to visit her mother, the relatrix, at various intervals.

Subsequently the court entered the following supplementary order:

Now, November 20, 1919, the general custody of this child having been awarded to the child's paternal grandmother, Rebecca J. Tweedy, and an order of court having been heretofore made directing that said child be permitted to visit her mother after school hours on Friday evening and until the following Sunday evening, as will appear by the text of the order heretofore made, and the custodian of the child having been directed to surrender the custody of the child to the child's mother on Friday evening, the custodian, Mrs. Rebecca J. Tweedy, is ordered and directed to exercise her authority over said child and to direct the child to accompany her mother on Friday evening after school hours as frequently as the child's mother may call for said child at the residence of the child's general custodian, and to use her authority as general custodian of said child to compel obedience to the order of the court as heretofore made.

*Errors assigned* were the orders of the court.

*Lawrence M. Sebring,* for appellants.

*Louis E. Graham,* and with him *Frank H. Laird,* for appellee.

OPINION BY KELLER, J., July 14, 1920:

When these proceedings were begun, the child, Rebecca Jane Tweedy, then nine years old, was in the lawful custody of her father, James Tweedy, who was living with his parents, the other respondents, in Beaver. Her mother, the relator, for no apparent cause had left her husband and child almost two years before and was living with her mother in Beaver Falls. During that

period she had called to see her child but four times and on two of those occasions missed her because she had given no notice of her coming and the child was away from home. With the full consent of her mother, if not by her request, the child had been cared for by her grandmother from early infancy, and had received from her the intimate care and ministrations usually given by a mother. She had a good home, was well cared for and attended school regularly. Nothing had been done by her father or grandparents to alienate the child from her mother nor was the latter denied opportunity to visit her. In company with her grandmother she had visited her mother in Beaver Falls, and the only substantial complaint was the refusal of her grandmother to let her make the relator a long visit during the school session to the detriment of her school work—an entirely proper and sensible decision. On such a state of facts the writ should have been promptly dismissed. The court, however, awarded the custody of the child to her grandmother, Mrs. Rebecca J. Tweedy, but ordered that she should be allowed to visit the relator at intervals, "the frequency and duration of such visits shall be agreed upon by the parties or their counsel, or, in the absence of such amicable agreement, will be made the subject of a further order." The parties not having agreed upon the frequency and duration of the visits to be made by the child to her mother, the court, six weeks later of its own motion, ordered that the child "be permitted to visit her mother, Myrtle Tweedy, at her home in Beaver Falls, Pennsylvania, each week hereafter for a period beginning immediately after school hours on Friday evening and extending until the following Sunday evening. Rebecca J. Tweedy, grandmother of said child and having her general custody under existing order of this court, is directed to surrender said child to the custody of her said mother or someone by her authorized for that purpose at such times as to make this order effective, and said Myrtle Tweedy is to return said child

to said Rebecca J. Tweedy at the times herein indicated." In pursuance of this order, the mother, Myrtle Tweedy, went on October 31st, to take the child, and the child refused to accompany her. Due to the long absence of the mother, the child was strange and unwilling to go with her. The grandmother, Rebecca J. Tweedy, was not at home but James Tweedy suggested to the relator that she should come down several evenings a week and see the child so that the latter would become better acquainted and would be willing to go with her. The mother refused to do this, but instead brought a proceeding to have the respondent, Rebecca J. Tweedy, attached for contempt in not obeying the order of the court. A hearing was had upon said rule and the testimony of the relator, Myrtle Tweedy, was taken in full. When the respondents desired to give testimony to show the circumstances in connection with the matter, that the child was of a nervous, excitable disposition, and by reason of what had been said to her by certain companions at school was afraid that if her mother took her away she would not return her, that every time the mother called to take her the child was intensely wrought up, resulting in a prolonged crying spell, and that the respondents had done nothing whatever to interfere with the child visiting her mother, the court refused to hear any testimony on the part of the respondents, and entered an order requiring the custodian, Mrs. Rebecca J. Tweedy, "to exercise her authority over said child and to direct the child to accompany her mother on Friday evening after school hours as frequently as the child's mother may call for said child at the residence of the child's general custodian, and to use her authority as general custodian of said child to compel obedience to the order of the court as heretofore made." This could have no other meaning than that the child's grandmother was directed to administer corporal punishment to the child and compel her by force to accompany her mother.

We know of no law which justifies the entry of such an order and certainly none under the circumstances of this case. It must be remembered that the governing consideration in a proceeding of this character is the welfare of the child, not the rights of the parent. The latter must yield to considerations affecting the welfare of the child: Com. v. Sage, 160 Pa. 399, p. 407. It is, of course, eminently desirable that this child should not be estranged from her mother or her mother's family, and those having custody of her person must do nothing to bring about such a result, but where the child has been estranged by the mother's own conduct and is of a highly nervous and excitable temperament so that an enforced visit away from the home to which she is accustomed may be injurious to her health, such a visit should not be insisted upon by the mother having regard for the well-being of her child and should not be enforced by the court. The suggestion of the respondents that the mother should first gradually win her way to the acquaintanceship and affection of the child was an entirely reasonable one.

The statute law has been changed since the decisions of Com. v. Blatt, 165 Pa. 213, and Com. v. Strickland, 27 Pa. Superior Ct. 314. The Act of July 11, 1917, P. L. 817, requires this court to consider the testimony and make such order upon the merits of the case as to right and justice shall belong. We have given due consideration to all the testimony, and are of the opinion that the order of the court was without legal justification.

The first four assignments of error are sustained; the fifth assignment is overruled. The mere taking of an appeal did not act as a supersedeas. Such a proceeding is governed by the twelfth section of the Act of May 19, 1897, P. L. 67, and the appeal does not operate as a supersedeas unless so ordered by the court below or the appellate court or any judge thereof.

The order of the court below is reversed. The child, Rebecca Jane Tweedy, is hereby remanded to the cus-

tody of her father, James Tweedy, and it is ordered that the relator, Myrtle Tweedy, be permitted to visit the child at such reasonable and convenient times and hours as will not interfere with her schooling, and that the child be permitted to visit her mother at Beaver Falls, during vacation periods and at such other times as will not interfere with her school work. The costs to be paid by the appellee. The record is remitted to the court below with directions to carry this order into effect.